The Honorable Judges of the United States Courts of Appeal in and for the 7th Judicial Circuit. Deary, deary, deary, all persons having business before this Honorable Court are admonished to draw near and give their attention as the Court is now sitting. God save the United States and its Honorable Court. Thank you so much and good afternoon to everyone assembled. Thank you for joining us here today to work through our loan case this afternoon. It is Holmes v. Neal, Appeal Number 23-2890, and we will welcome Mr. Binza to the podium. Good afternoon and may it please the Court, I reserve five minutes for my rebuttal. Michael Binza on behalf of Mr. Holmes along with my co-counsel, Carl Saddlemeyer, and Harry Simon. There are two issues before the Court. The first is the procedural matter as to the status of Mr. Holmes' 2005 habeas petition and the second is the merits of his equal protection and due process claims arising out of the denial of relief by the Indiana Supreme Court. As a preliminary matter, the Court first has to address whether or not the District Court erred in denying jurisdiction of the 2005 petition on the basis that it was a second or successor petition. As a predicate matter, before you get to 28 U.S.C. 2244 B.1. Review, that is whether or not a second or successor petition can be authorized, the is in fact a second or successor petition. The Supreme Court has outlined that there are multiple ways in which a second in time petition is not subject to 2241 B. Review. As a general matter, the outline issued by the Court and by every circuit court that has decided the issue except the Fifth Circuit is that the issue of a second in time first petition is determined by whether or not the merits of the claim could have been raised and litigated in the initial petition or at least by the time the initial petition was dismissed by the District Court. That's the circumstances that we find ourselves in this case. Mr. Holmes filed his initial petition in 2000. Not until 2002 when the Indiana legislators amended the death penalty statute and then in 2004 when the Indiana Supreme Court in the Saylor decision exercised its judicial authority to retroactively apply those 2002 amendments to pending capital cases in Indiana did this claim arise. Mr. Holmes filed his state court litigation in 2004. He asked the District Court to stay the then pending initial petition as he then returned to state court to litigate relief under the Indiana decision in Saylor. The District Court refused to grant that stay. Shortly after that, the District Court then dismissed the initial petition. The Indiana Supreme Court decided to deny Mr. Holmes relief under the Saylor decision and the change in the statute in January of 2005. There was simply no opportunity for Mr. Holmes to present his claim in his initial petition because the petition had already been dismissed. His claims did not become ripe until January of 2005 when the Indiana Supreme Court denied him relief, giving rise to his claims of denial of equal protection and due process. The District Court, however, determined that because this was his second petition, it should be treated under 2244B1 and dismissed the petition. Mr. Benzo, what do you make of the respondent's argument that Mr. Holmes had an opportunity to try to amend that petition before the District Court lifted the stay and then basically reinstituted the earlier order dismissing the petition later on in, I think it's 2013, right? So, in terms of amending the initial petition when it was still pending before the first dismissal in 2004, as the state pointed out in response to Mr. Holmes' motion to stay, the claim he was presenting to the Indiana Supreme Court was a pure state law claim, that there was no federal claim at the moment he was litigating in state court to amend his habeas petition. So, it could not have amended in 2004. As this court is well aware, Mr. Holmes' case has been before the court several times dealing with the issue of Mr. Holmes' competency. Mr. Holmes' mental illness has permeated the entire scope of this litigation. Initially, this court did vacate the dismissal of both petitions and send the case back to the District Court to be stayed until such time as Mr. Holmes was determined to be competent to proceed with the litigation. When the case came back to the District Court, the District Court administratively closed both cases. There was no litigation going on in either of those cases, so there again was no opportunity to amend because Mr. Holmes was incompetent and the litigation was going to be stayed. Eventually, the state, after the Ryan decision, moved to re-dismiss the 2000 petition, but did not file a motion to dismiss the 2005 petition. Again, the focus of the litigation at that point in the District Court was the impact of the Gonzalez decision on this court's finding of incompetency and this court's order of stay. Because only the 2000 case was reactivated, again, there was no opportunity to then amend that petition to unify in the 2005 into the 2000 petition. This case then came back on the 2000 case and in 2014 this court determined that competency did not matter pursuant to the Ryan decision and dismissed the merits of the 2000 petition, but the 2005 petition remained pending in the District Court. So, there was no opportunity for Mr. Holmes to amend that initial petition in the way that the litigation proceeded to move the 2005 claims into the 2000 petition. That's the reason that we are in this position today, but the issue is whether or not his second petition, there's no disputing he filed one petition and then he filed a second petition, but as the court noted in both Martinez-Villareal and in Panetti, that a second petition numerically does not instantly solve the issue of whether or not 2244B1 applies. Rather, the court should look to the issue of the pre-EDPA language of the abuse of writ and under no interpretation of any abuse of writ standards would Mr. Holmes' 2005 petition be considered an abuse of writ. The claim simply did not exist until January of 2005 when the Supreme Court refused to apply the Saylor decision and logic to Mr. Holmes' case. That actually raises an interesting question about what judgment you're actually challenging here. It's my understanding there is no challenge to the actual death sentence here. There's the challenge, in other words, the underlying criminal judgment. The challenge is to the state Supreme Court's decision to deny permission to file a second or successive under state procedural law, second or successive post-conviction motion and to gain the benefit of the Saylor decision, which are the same treatment essentially as the Saylor decision. There's no flaw identified in the underlying criminal judgment. That is correct, Your Honor, but much like an Atkins claim or a claim under Roper v. Simmons that a defendant is ineligible for a death sentence, if the state court reviewed an Atkins claim and denied relief under Atkins, the judgment underlying that case is still the death sentence imposed from the original trot. But the timing of habeas litigation from that Atkins denial is the issue that creates the second and third position. Right, but beyond the timing question, I understand that's what we're talking about right now, there is a question I think open in this circuit about whether errors in post-conviction proceedings are cognizable and habeas at all. Every other circuit that has addressed that question has said no if the challenge is to some sort of defect in the post-conviction proceeding or some sort of flaw in the post-conviction proceeding, which is what you're claiming. You're claiming it was a violation of due process and equal protection to not give your client the benefit of the same treatment that the defendant and sailor got, that that kind of error is not cognizable and habeas. It is, Your Honor, in the regards to whether or not the denial violated Mr. Holmes' due process or equal protection claims. There is a difference in whether or not a challenge to the procedures themselves that don't raise the issue of due process or equal protection create an issue of a federal claim. But in this particular circumstance, we do know that when a state creates a remedy and creates a rule of application and then denies that right to similarly situated individuals, that is a cognizable habeas claim under the equal protection claim and is a cognizable federal claim under due process. And the case that says that is? Regarding due process, the easy case to look to is Hicks v. Oklahoma, which recognized that a state's declaration of a state rule regarding the sentencing procedures and the right to a jury. No, I'm not talking about the merits question. I'm talking about whether an error of that sort, if it occurs only in state post-conviction proceedings, is cognizable and habeas. Other circuits would say no. Other circuits have said no, looking to the issue in Shin v. Ramirez, as to how can you litigate these particular issues. This court has not directly answered that particular question. But we would direct the court that even after Shin v. Ramirez, that there are vehicles for the federal court to review the propriety of the state court post-conviction proceedings. For example, if the state provides for appointed counsel and the state refuses to appoint counsel, that would be a cognizable claim. Even, I think, in those circuits that have looked to the procedural components of state post-conviction. It tends to look at the nature of the deprivation, the nature of the procedural claim, as opposed to the underlying is this a post-conviction claim or not. In regard to the issue as to whether or not this was a second or successor petition or a second in time, the primary question is focused on the issue of ripeness. That is, when did the claim become ripe for review? In Martinez v. Arreal and in Panetti, the issue underlying the litigation was a competency-to-be-executed claim. But a competency-to-be-executed claim is not ripe for review in state or federal court until an execution date has been set. This creates the dilemma for defendants that they would have to raise unripe and maybe even meritless claims in their initial petition with an eye towards ultimately having that claim reviewed years down the line at the end of state and federal court litigation. The court recognized that the claim simply may not exist at the time of the first petition, and therefore looking to the abuse of writ standard, asking the question at the time of the initial petition, did this claim exist, was it ripe for review, makes the decision as to whether or not a claim is, in fact, a second-in-time first petition or whether or not it should be treated as a second or successor subject to 22441B review. This court in OBIAD recognized that the process of second-in-time review, which although in the United States versus OBIAD, this court was looking through 2255, the test is the same. The issue was when did his claim arise, which was after his initial review of his first 2255 petition. This court joined all of the other circuits that have addressed this issue except the Fifth Circuit in recognizing that that logic of second-in-time first petition applies to all claims that a defendant wishes to bring in a second or third habeas petition. The issue isn't numerically, is this a second or successor? The issue is as a matter of law, is this a second or successor petition? Judge Lee, you asked why couldn't he have simply amended at some point during his litigation. I think the recent Supreme Court decision in Rivers outlines the fact that once the district court dismisses the petition, the district court loses jurisdiction and the ability to amend the petition. And so at every stage in the litigation, when the 2005 issues arise, there was no petition in which he could then amend. Rivers tried to amend his petition while it was pending in the Court of Appeals and the Supreme Court determined that once it leaves the district court, you cannot amend. So we were without a vehicle to amend that petition as the case was going forward. If, as you argue, the Panetti ripeness exception to the second or successive bar has the breadth that we declared it to have in the Obeid case, and if, as you argue, the other circuits are wrong about whether errors in post-conviction proceedings are cognizable in habeas and we should be the outlier on that issue, doesn't that just blow a giant loophole in the whole Oedipus on second or successives? Absolutely not. I think actually courts are well capable of making the decision, is this claim really a second-in-time claim or is the defendant trying to circumvent the Oedipus rules? The courts have done that forever when they do abusive writ analysis, which is really what the court directs in Martinez, Villareal, and Panetti, is to look to that type of analysis. This court did that in the Lambert decision. When Lambert returned to this court with his claim of a second-in-time petition, the court recognized that the claim he was presenting was the exact claim that he had presented in his initial petition. That is a successor or second petition. This court is quite capable, district courts are quite capable of making those decisions of reviewing the nature of the claim, the conduct of the litigation, when did the claim arise, and subjecting it to that review, which is all the Supreme Court says Martinez, Villareal, and Panetti require. It doesn't require that every claim is labeled a second-in-time petition, it simply requires the district court to make that initial determination. If the claim was not right by the time the initial petition was dismissed, then the claim should be treated as a second-in-time first petition. It doesn't blow a hole in the AEDPA statute, and it doesn't eliminate 2244B1, because 2244B1 is still applicable in those cases in which a defendant is truly returning to the federal court with what would be an abuse of the writ, second or successor petition, which district courts do all the time, and which the district courts in this court has done repeatedly prior to the anti-terrorism bill changes to 2244. It's simply an application and codification by Congress, as the court recognized in Martinez-Villareal, of the practice of abuse of writ. And this case presents a claim that is not an abuse of the writ, because Mr. Holmes asked the trial court, or the district court, to stay the case. He did try to bring this into his initial petition if there was a federal claim, but as the state responded in his motion to stay, that at the time he was in state court, it was a matter of pure state law. It was a matter of the Indiana Supreme Court's decision in Saylor that created his return to state court. But because we did not know what state court might do, we asked the district court to hold the case pending the resolution of the issue in the Indiana Supreme Court. Unfortunately for Mr. Holmes, his case arose before the Rines case. In Rines v. Weber, the Supreme Court directed that the district court should in fact grant stays in this very type of circumstance so that we don't end up with a second or successor or second-in-time petition issue. But the district court denied that stay. And 16 days later, it dismissed the initial petition, resulting in Mr. Holmes having no other vehicle to raise his claim except to file a second-in-time petition in the district court. Turning to the issue of the merits of the claim, the first issue to address is whether or not the Indiana Supreme Court's decision constituted a denial of due process. The issue of due process in a sentencing proceeding or in a proceeding in state court is subject to federal court review even if it is grounded in the issue of a state law claim. In this case, the Indiana Supreme Court in the Saylor decision proclaimed that from that point forward, no person would be subject to execution in the state of Indiana without obtaining a unanimous jury verdict regarding the sentence of death. That's a bit of an overstatement. Actually, Your Honor, it's not. It's referenced at least three different times in the Saylor opinion where the court directly says that the impact of the application of the 2002 amendments were such that a person would not be subject to death absent that unanimous jury sentencing verdict. Well, the court specifically disclaimed that this was any kind of a retroactivity holding. Correct. The changes in the law were not retroactive. It was not resting its decision on retroactivity analysis or any kind of retroactive application of the new statutory scheme. The court was exercising its independent judgment under the state constitution to resentence the defendant in Saylor and then mention the other people on death row, your client included, and specifically limited the holding to differently situated death row inmates which included Saylor, the petitioner there, and two others. And so it's not a retroactivity decision, and so the whole using retroactive application terminology is kind of misleading. Well, it's difficult to actually characterize how the Supreme Court did what it did. They exercised the authority to review Mr. Saylor's case in its authority to inherently review the validity of sentencing opinions. Well, not inherently. It's constitution-based. They have that authority to review the sentencing judgments. What they did, though, was base the decision on the propriety of his sentence on the fact that a person like Saylor, a person like Minnick and Ben Israel would not be eligible for a death sentence to be imposed by a judge based on the jury verdict in their cases after the 2002 amendments. You're right, Your Honor. It is not a pure retroactive application of the 2002 amendments. It's also not a retroactive application of Ring and Apprendi. Well, there's another nuance with a material difference here, which is that the Saylor case and then the other two death row inmates to which that decision applies who were similarly situated, their death sentences were imposed by the court with a recommendation against the death penalty by those juries. And here we don't have that. Correct, Your Honor. And that's the distinction that the state Supreme Court rests at its denial of permission to file a second or successive, saying that's a material distinction. You know, we can assume that the state Supreme Court justices in Indiana know due process principles and equal protection principles like every other judge and so was making those statements about the differences between the current death row or then current death row inmates for that reason. Why doesn't that foreclose your merits argument here? So I would direct the court to Hicks v. Oklahoma again on the issue of the due process component because in Hicks the Oklahoma Court of Criminal Appeals announced the rule regarding jury sentencing and that the sentencing structure in Oklahoma at that time was unconstitutional. Mr. Hicks had the same error in his case. He came to the Oklahoma Court of Criminal Appeals. The court recognized that he had the error and said, well, we're going to subject you to prejudice review, which did not exist in the initial decision. The same thing happened in this case. The Indiana Supreme Court reviewed this case and said, well, Mr. Holmes is different because he did not suffer any prejudice by having the judge impose the sentence that the judge did. I think what the court said is that he would be subject to the same sentence today because the law has not changed with respect to his situation. If there is essentially not an affirmative recommendation from the jury against the death penalty but an inability to decide, the current state law still shifts the decision-making authority to the judge in that situation. With all due respect to the Indiana Supreme Court's decision in Holmes, that isn't actually what the Indiana statute actually requires. That under the statute, in effect today, which is the same statute that enacted in 2002, based on Mr. Holmes' jury verdicts at guilt phase and the lack of a unanimous verdict at the sentencing phase, he would not be subject to the death penalty because he did not get the jury's specific findings required by the statute regarding the existence of the aggravating circumstances necessary to impose a death sentence. The statute applicable in this case requires specific jury verdicts regarding the existence of the aggravating circumstances. Mr. Holmes requested those jury instructions and those jury verdict forms and was denied. And in fact, we don't have case law from the Indiana Supreme Court, am I right, saying that you can assume or infer from the guilty phase findings that a sentencing phase or penalty phase jury would make those exact same findings? That is correct. The jury is specifically instructed to decide the existence of the aggravating circumstances at the sentencing phase. They are not bound by a guilty verdict at the trial phase. Even if the evidence is similar? Even if the evidence is identical. Okay. Yes, the jury is free. Indiana is very unique in these circumstances. The existence of the aggravating circumstances are not determined until the sentencing phase. And so is it, in fact, almost a brand-new trial, even if the jury in a different… Here, assuming the case went back, it would be a completely different jury. But in the normal instance under this Indiana statute, it would be the same jury?  And so would the state roll out the evidence all over again for the penalty phase? Yes. So there's no circumstance in which the penalty phase jury would just sit and say, okay, we found everything yesterday during the guilty phase. Let's just start from there. Except that the aggravating circumstances are different than the guilt phase decision. The aggravating circumstances require specific findings, for example, regarding Mr. Holmes' role in the offense. His trial phase, guilt phase sentencing instructions were simply to find him and Mr. Vance killed the victims in this case. But there was no requirement that they make the individual decision that Mr. Holmes, in fact, was the actual killer. So those sentencing verdicts don't bind the jury at the sentencing phase as to the existence of the aggravating circumstances. You mean the guilt phase? The guilt phase. They're not bind for sentencing. If there's no further questions, I'll reserve my time for rebuttal. Thank you. Thank you, Mr. Colby. Welcome. Thank you. May it please the court. Holmes' claims are waived for failing to present them to the district court, and the district court properly dismissed his petition as successive. But before I discuss those two insurmountable hurdles, I will first discuss whether Holmes has identified a federal claim. Holmes fails to articulate how the Indiana Supreme Court's decision in this case could be a violation of rights due to due process or equal protection. First, as this court said in Lambert, the Indiana Supreme Court's decision on this issue was based on state law and does not present a federal claim. Second, Holmes was not denied due process. He presented his claim to the Indiana Supreme Court, and they adjudicated on the merits. He has not identified any process to which he was entitled and did not receive. Third, as the court pointed out in Lambert, Holmes is not similarly situated to Saylor. There is no inconsistent treatment. He fails to allege or show that the distinction the Indiana Supreme Court made between Saylor and Holmes was contrary to or an unreasonable application of clearly established federal law. Holmes fails to identify a federal claim. This is fatal to his argument that he has a new right claim. Any claim Holmes has was based on the 2002 amendments to Indiana's death penalty statute and was available to him during his first habeas proceeding. As he recognized, because he sought a stay to return to the state court to raise the claim based on Saylor, which the district court recognized was based on state law and did not deny the stay until after his first attempt to go to the Indiana Supreme Court failed because he raised a procedurally improper motion. He filed a motion to review his sentence, and the Indiana Supreme Court said that's not a proper procedure. If you want relief, you need to file a request to file a successive post-conviction relief petition, which then Holmes did after his first petition was denied. But he was aware of his claim, and he raised that same claim in the successive petition that he raised to the Indiana Supreme Court the first time. And the Supreme Court, based on state law, said your sentence is not inappropriate because if your case happened today, you are still eligible to receive the death penalty. I'm not sure I understand my friend's argument that Holmes is ineligible to receive the death penalty. The aggravators were approved, making him eligible for the death penalty. Just because the jury did not reach a recommendation, the statute allows for that. And if a jury can't reach a recommendation, it goes to the trial court as if it was not tried to a jury at all. Counsel, let's take kind of a hypothetical that is beyond reality, but I think I wanted to kind of ask you about this. If the Indiana Supreme Court in 2005, when it adjudicated Holmes' request to file a successive state post-conviction petition, if the Supreme Court had said, you know what, we don't think that this post-conviction petition is meritorious because your name begins with an H. All the other defendants, their names don't begin with an H. And so therefore, we're denying your petition. At that point in time, do you think Mr. Holmes has a federal claim that he could bring in a habeas petition saying that such an application of state law violates equal protection due process because it's so arbitrary? I think so. If he was raising an arbitrary claim that the claim is arbitrary, another example would be if the Indiana Supreme Court based it on a racial or other protected class and denied him relief based on that ground, that would raise a new claim. But he hasn't raised anything like that in this case. His argument is that the state Supreme Court should have applied its discretionary review and revise power in the same way it did to Saylor. But the holding in Saylor is clear. The reason that they granted, they found Saylor's sentence inappropriate is because under the new statutory scheme, he would be ineligible, if it happened today, to be sentenced to death. And Holmes and Lambert were not in that situation. And so neither of those two individuals got relief. And I completely understand those arguments. But those arguments seem to go to the merits of his claim as opposed to whether or not – I mean, there is some overlap. I give you that. You know, habeas law is not, I guess, the most structured or delineated area of the law. But it seems to speak more to the merits of his due process claim, an equal protection claim. In other words, that he is dissimilar to the other defendants, right? And as opposed to squarely addressing the issue of whether or not his claim was ripe at the time prior to the final dismissal of his first petition. I do agree with you. I think the problem is to decide whether the claim is ripe, we have to identify the claim. And so he wants to have this amorphous claim that he wants to raise and say whatever the claim is, I'm not going to clearly define it. But whatever it is, it wasn't ripe until the Supreme Court decided my case. And so when you pin down what exactly his claim is and whether it was ripe, the claims heretofore that he raised in his petition before the district court were based on – were not based on this claim that it was arbitrary, that the Supreme Court's decision was arbitrary or capricious in some way. It was that he was entitled to some process, which, again, he doesn't identify. Well, I mean, I think to some extent, wasn't he saying, look, I am just like all the other defendants that you claim that you, Indiana Supreme Court, don't think I'm like them. But I think I'm exactly like them. Now, whether or not you agree with them or not, that's kind of a merits question. But that's the claim I'm raising, that it's equal protection and due process because your way of distinguishing me from the other defendants is arbitrary. So that sounds to me like an equal protection, due process claim, although perhaps not a meritorious one, but at least it sounds like one. And again, he has never identified a clearly established law that shows that the distinction that the Indiana Supreme Court drew here is an impermissible one. And that would be – if he was raising that claim, I think that that would be a stronger claim for him. But he hasn't, and going back to this court's decision in Lambert, Lambert was raising the exact same – used the exact same language in the claims he was raising. And this court found that it was a state law claim, that there was no federal claim. And that – and then, of course, this court looked at Holmes and said, the Indiana Supreme Court's result in Lambert is consistent with Holmes. Those are consistent, and we deny relief to Lambert. I don't see a way that Holmes wins when Lambert didn't. And he has provided no way that the Lambert decision doesn't apply in this case. And again, he says trust the district court to make these calls. The district court made this call here without any help, again, on the waiver aspect, without any help from Holmes as to how to decide this claim. The district court looked at it, looked at Lambert, and said, Lambert applies. And so I'm dismissing this as successive. And he still doesn't say how Lambert doesn't apply. I think your reliance upon Lambert for the adequate independent state grounds kind of argument, procedural default argument, I think to me at least has some weight. But we have to remember that Lambert was decided before – with regard to the procedural issue, that it was decided before Panetti, before Montgomery, before OBIAD. And so before all this rightness kind of theory that the district court kind of announced in Panetti. And so it seems to me that if we can – and I know it's hard – but if we can disaggregate the merits of a due process claim, an equal protection claim, from the stating of a due process claim or the alleging of a due process claim or an equal protection claim, then perhaps Lambert doesn't provide us with as much guidance. Because in Lambert, the second petition was really challenging some of the evidence that went into his first trial. And the – and what's more, the panel at that time didn't have the benefit of Panetti and all the cases that came after that. So there are two aspects of Lambert, of course. There is the procedural aspect, but there's also the merits aspect in which this court looked at whether to authorize a successive petition and decided that there was – he didn't make out any claim that – federal claim to go back to the district court to decide. And so when you look at the merits part of Lambert, that's a complete factual the same. Going to successive, this court I don't think really needs to reach. I think there is a problem with defining ripeness two largely because then it swallows 2244. If any claim can be raised, then you don't have to go through the elements of 2244. But I don't think this court needs to reach that bigger question here as to whether Obed went too far or whether Panetti is limited to competency to be executed. I don't think the court needs to reach that because, again, we don't have a federal claim in this case to adjudicate or even to determine whether it's right because he hasn't identified one. Hicks v. Oklahoma doesn't provide him a federal claim. Hicks v. Oklahoma was about Oklahoma denying an inmate, a defendant, the right to jury sentencing. And the court said, we're not going to allow you to be sentenced by the jury. And that was a process that was denied him. There is no process here that was denied Mr. Holmes. So let's assume, getting back to kind of the hypothetical that you and I were talking about, that the 05 Illinois-Indiana Supreme Court decision was based upon an impermissible trait, race or what have you. And I know that's not what we have here, but let's just assume. If that were the case, do you still believe that Mr. Holmes had the ability to amend his first habeas petition to raise that claim? Or do you think that because of the way things kind of turned out that, in fact, that he didn't have a chance to actually raise such a claim? In 2013, the state moved to lift the stay in Holmes' case. The court didn't lift the stay and decide the petition until September of 2014, almost a year later. He had a year, and he did make filings during that time. He had that whole year to say, if you lift the stay, I also want to amend to present these claims that are out there. But he didn't. So he had the opportunity when it was before the district court to say, I want to amend. Here, I think if you look at the case, after Lambert was decided, the wind went out of the sails for Holmes on that claim because this court already said, you don't have a claim. So Holmes really just abandoned that 2005 petition and didn't do anything with it after that. He put all his effort in the 2000 petition, which raised all his claims and had hundreds of pages of briefing. I think that's what happened here is because, again, Lambert so clearly decides his claim. It seemed, though, looking at the docket in that 00CV1477 case, trying to kind of recreate what happened there, it seemed that the main concern that the district court had at the time was whether or not the district court itself had the jurisdiction to lift the stay or whether it had to go back to the Seventh Circuit. And so it seemed like there was some briefing along those lines, and that's what the court ordered, that the brief address in its January 23rd, 2014 order. And then later on in September, it issues the order, grants the motion to lift the stay, and in the same order basically adopts the dismissal that the district court had entered into back in, what was it, 2004? And so given those scenarios, when do you think Mr. Holmes would have had the opportunity to try to convince the district court that, you know what, just go ahead and amend my petition to include this claim? Well, I at least think at that particular point, he could have told the district court, hey, I have this other petition that's out there, and if you're either you need to decide that petition too or use it or amend my new petition. But he pretty much abandoned that 2005 petition and was only looking at the 2000 petition. And again, I think that only matters if there's a new right claim, and here there is no new right claim. Just to answer a question, the Indiana Supreme Court routinely relies on the guilt phase verdicts to cure problems with the penalty phase. The Pope case that's cited by the appellant is a case that the Indiana Supreme Court did that. They've done it in other cases, but that's one that comes to mind right away. And it often happens, like it did in this case, that you have the guilt phase, you get to the penalty phase, and the state says, I incorporate all the evidence that was presented at the guilt phase, and then goes on, and there is no new evidence about the aggravators. They rely on the evidence that was presented in the guilt phase. And in those cases, you have the jury making actual findings, right? You could or you could not, because you could have a jury who doesn't reach any decision, like here, and so you wouldn't have any verdict forms because the jury would say, we can't reach a decision, and so we're at an impasse. And the judge would say, like here, pull all the jurors. Are you sure that no more deliberation would help that? No, no, and so the judge says, okay, I will declare this a no recommendation, and I will proceed as if the jury had not even been involved. That's what would happen today, too. So, again, Holmes, if Holmes' case happened today, he would be eligible for the death penalty. And there have been other defendants. Daniel Wilkes was a—the jury could not reach a recommendation, and he was put on death row. He received relief on post-conviction, but he was on death row. The Indiana Supreme Court affirmed his decision in 2009, considered the recommendation as a mitigating circumstance. William Clyde Gibson, who's on death row right now for two different cases. One of his cases involves a decision by the court alone and no jury recommendation. So it's simply just not the case that in Indiana a jury recommendation is required for a sentence of death. The statute doesn't require it, and the case law doesn't require it. Thank you. If there are no further questions, the state asks that you affirm the judgment of the district court. Thank you. Mr. Benza, we can take you back up to five. Thank you, Your Honor. I interrupt you as you were entering your rebuttal time. Thank you. Regarding the claim that the Attorney General raises that Mr. Holmes somehow abandoned the 2005 petition, we direct the court to the fact that the Attorney General was the one who filed the motion to lift the stay in the 2000 initial petition, but did not file the similar motion in the 2005 petition. The 2005 petition remains stayed pursuant to this court's order because the state never sought to reactivate that litigation. Mr. Holmes did not abandon that case. That case remained administratively closed on the district court's docket. Judge Lee, you're correct. In 2013, the litigation in the district court focused on the impact on the Ryan v. Gonzalez decision on this court's finding that Mr. Holmes was incompetent in a remand to the district court. It was not a litigation on the merits of his habeas petition. It was solely focused on whether or not the district court should lift the stay. Additionally, the district court simply lifted the stay and then reissued Judge McKinney's 2004 opinion, not providing Mr. Holmes any opportunity to continue the litigation of his 2000 petition. I would direct the court to the fact that Mr. Holmes was never, for example, permitted to file the traverse in his 2000 petition because the district court dismissed the petition midstream of the litigation. So if the district court, and what was briefed in the 2013 litigation, is that the district court, if it was going to lift the stay, if it had the authority to reverse this court, then it should reactivate the 2000 petition and continue the litigation subject to that 2000 petition, including permitting Mr. Holmes to file his traverse to engage in investigation, discovery, and whatever else might have been permitted at that time. That simply did not happen. Judge Barker issued the order lifting the stay and then reprinted Judge McKinney's opinion. She didn't even sign it herself. She just reissued his opinion. But the 2005 petition remained on her docket, remained administratively closed, and it was not abandoned by Mr. Holmes. It was simply left behind as the state focused its litigation on the 2000 petition. Additionally, I would add that a due process and equal protection claim doesn't require a state to act with racial animus to generate a constitutional claim. Those are the extreme and, quite frankly, the easy examples to get you to due process and equal protection claims. But those claims exist regardless of the motive of the state for denying access to the due process and equal protection of law. The 14th Amendment does protect on the basis of color. It does protect on the basis of racial identity and other issues. But it also protects all people to be equally accessed and under the equal protection of the law and subject to the due process. We don't know what motivated the Indiana Supreme Court to apply a prejudice analysis to Mr. Holmes' case. It was absent in the Sailor Minnick and Ben Israel cases. By the way, all three of them would still have been eligible for a death sentence because the jury's findings at guilt supported the aggravating circumstances. The Indiana Supreme Court recognized that but said that that didn't matter because they did not receive a unanimous jury verdict for death. Neither did Mr. Holmes. Mr. Holmes received a jury verdict that we know was 10 to 2 for life. The Indiana Supreme Court changed the rules to apply to Mr. Holmes' case only. And that's where the due process and the equal protection violation occurred. Why is whether he'd be eligible for the death penalty today the right question? And if so, or if it's a relevant question, why is there such a fundamental disagreement between the parties this morning about what the procedure is in Indiana? I think that the issue regarding the disagreement of the procedure is that the issue of how the case would play out today would not play out the way it did for Mr. Holmes. He would have, for example, had to have had the jury verdict forms for aggravating circumstances, and those verdict forms would have to be returned in order for the judge to engage in sentencing under the current statute, and that didn't happen. I think the problem we're all struggling with is we're playing a game of what if with a statute that didn't apply, and the facts of Mr. Holmes' case don't fit with what the statute requires to be able to say the statute would say today he's eligible. Thank you. Thank you, Your Honor. Thank you. We will take the case under advisement and thank both counsel, both parties.